A. Franklin Mahoney, J.
This court, by memorandum decisión dated September 8,1971, denied a motion by the defendants to dismiss the complaint Which sought a judgment directing that the County Legislature of the County of Albany reapportion itself and, further, directed that the Legislature “ submit to. it, within a reasonable time after the 1970 census figures are available, a plan of reapportionment drawn in accordance with said figures ”. An order to that effect was signed on November 5, 1971 and entered in the office of the Clerk of the County of Albany on November 9,1971.
On February 9,1973 the plaintiffs moved for summary judgment and submitted a proposed plan of reapportionment to be considered by the court. The matter was referred to the undersigned and on February 28, 1973 oral arguments were heard wherein counsel for the plaintiffs urged that its proposed plan be accepted since the defendant legislative body had done nothing to comply with the afore-described order of November 5, 1971. The defendants responded with the argument that the official 1970 census figures, in block form, had not been avail *247 able until May of 1972. The defendants were supported on this point by the Deputy Attorney-General, appearing for the People in his statutory capacity under section 71 of the Executive Law, he pointing out that in many areas of the State, including Albany County, there were challenges to the accuracy of the census figures and that they were not officially promulgated until May of last year. However, the Deputy Attorney-General affirmed the view of the plaintiffs that such figures in unofficial form were available considerably sooner. Further, it was the view of the Deputy Attorney-General that the laches of the County Legislature should not result in a forfeiture of their duty to speak for the electorate if it promptly produced a plan of reapportionment that could meet the tests of constitutionality. In this connection it is noted that the defendant legislative body, on the 14th day of December, 1971, approximately one month after the entry of the order with which the plaintiffs contend they did not comply, did pass a resolution authorizing an existing committee known as “ The County Commission of Alternate Forms of County Government ” to examine into a' reapportionment plan for the County of Albany based upon the 1970 Federal census figures and, further, to carry out that legislative mandate in a manner that would best preserve existing political subdivisions. The defendant county takes the position that the afore-entitled commission, of necessity, had to be careful and reflective in the conduct of its assignment in order to carry out the constitutional mandate (N. Y. Const., art. HI, §§ 4, 5) that all restructured districts be both compact and contiguous. Next, the defendant legislative body necessarily was mindful of the fact that the Common Council of the City of Albany would have to draw a plan of reapportionment reflecting the city’s decline in population between 1960 and 1970 and that it was in the best interests of the People that the proposed reapportionment plan of the county, as it related to the City of Albany, be as nearly similar to the proposed plan of the city as possible so that the citizens might not be confused by residing in different municipal and county legislative districts. While the court is mindful that as of this date the Common Council of the City of Albany has not reapportioned itself, it must give recognition to the fact that the attempts at co-operation between the .county and city planners were time-consuming.
On the .evening of February 27,1973, the Committee on Alternate Forms of County Government of the Albany County Legislature convened and had presented to it three proposed reapportionment plans drawn as a result of field work performed *248 using 1970 census tracts. That committee voted to recommend . to the Legislature a plan comprising 39 legislative districts. It labeled it Plan “A”. The committee also recommended an alternate Plan, “ B ”, in the event the Legislature did not adopt Plan “ A ”. The Albany County Legislature met in special session on March 6,1973 and formally introduced Plan “ A ”. The court, which had adjourned the argument on plaintiffs’ motion for summary judgment to March 7,1973, took proof on that date and on March 8, 1973 with respect to Plan “A” and the proposed plan of the plaintiffs.
From all of the above the court concludes that while the defendant county might have presented its proposed plan to the court for approval at an earlier time had it acted with a greater degree of alacrity when the 1970 census figures became available, it does not find that its failure to act more promptly constitutes a forfeiture of its right to act at all. It is the court’s view that the People of Albany County are better served by having a plan proposed for approval that has been passed upon by their elected representatives, particularly when there is sufficient time for the court to constitutionally test the legislative plan and impose the same, if found valid, in time for the forthcoming general election.
The plaintiffs ’ motion for summary judgment is denied.
The denial of the plaintiffs’ motion also removes from the court’s consideration their proposed plan of reapportionment. The court does not have to weigh contending plans and determine if one is superior to the other. Rather, the court sees its function as judicially determining the constitutionality of the plan proposed by the legislative body charged with that duty, Reynolds v. Sims (377 U. S. 533). Judge Jasen of the Court of Appeals stated this view more succinctly in the case entitled Matter of Schneider v. Rockefeller (31 N Y 2d 420, 427) as follows: “While petitioners urge several alternate plans which they claim approach mathelnatical exactness and'.minimize or eliminate violations of county lines, we would emphasize that it is not our function to determine whether a plan can be worked out that is superior to that set up by chapter 11. Our duty is, rather, to determine whether the legislative plan substantially complies with the Federal and State Constitutions.”
The court must determine whether the plan, as adopted by the Albany County Legislature, meets the constitutional tests of the “ one man-one vote ” principle as enunciated by the United States Supreme Court in Reynolds v. Sims (377 U. S. 533, supra) (Abate v. Mundt, 25 N Y 2d 309, 314). In doing so it *249 must bear in mind that the Equal Protection Clause of the United States Constitution requires that the legislative body “make an honest and good faith effort to construct districts * * * as nearly of equal population as is practicable.” This issue has been removed from the court’s consideration because the attorneys for the respective parties have stipulated on the record that each is satisfied, after a lengthy .review of the working maps and Other indices employed by each, that the plaintiffs’ proposed plan, no longer before the court, and the defendants’ Plan “ A ” complied with the constitutional mandate of “ equal protection” by faithfully adhering to the official .1970 census figures with a degree of fidelity that resulted in districts being drawn that accurately reflect the total population of that district as shown by the 1970 census figures. Accordingly, it can be said that Plan “ A ” satisfies the constitutional requirement of adhering to a population figure in each of its proposed 39 districts that is within acceptable and permissible limits of deviation from the mean, given a plan of 39 districts and a gross county population of 285,618 resulting in a mean unit of population of 7,352.
However, it must be noted that counsel for plaintiffs has only agreed that the variant from the mean in each district is mathematically acceptable, He does not agree that proposed Plan “ A ” is acceptable because of that mathematical exactness. Rather, it is his position that since the City of Albany had a reduction in population in the decade of the sixties equivalent to 11.4% that the allocation of 16 districts to the city, based on any arbitrary mean, is constitutionally impermissible and violative of the State Constitution’s anti-gerrymander provisions (N. Y. Const., art. III-, §§ 4, 5). Next, it is his contention that since Plan “ A ” allocates 16 legislative districts to the City of Albany, which showed an 11.4% drop in population between i960 and 1970 [a reduction of 3 districts] and only 9 full districts [1] and parts of two others [2] [an increase of 3 full districts] to the Town of Colonie which experienced an increase of population between 1966 and 1970 equivalent to 31.1%, the plan, in effect, dilutes the voting strength of that part óf the county [Colonie] showing the most rapid population advancement. I cannot agree.
First, attention must be focused on the fact that the people óf the County of Albany, in 1966, when the total county population was 272,926, approved in a referendum a reapportion *250 ment plan for the county consisting of 39 legislative districts. It seems logical that they might do so again since the gross population has increased by some 12,692 residents. Next, it must be conceded that the proposed districts in Plan “A” are reasonably “compact” and positively “contiguous” (N. Y. Const., art. HI). As such they preserve to a large degree the integrity of the existing political subdivisions within the county.[3] In this connection it should be noted that the United States Supreme Court in Reynolds v. Sims (377 U S. 533, supra) recognized the importance of the maintenance of political subdivisions as a shield against the invidious evil of gerrymandering that the plaintiffs charge is the purpose of Plan “A”. At pages. 578 to 579 of their decision the court said “A State [county interpolated by the court] may legitimately desire to * * * provide for compact districts of contiguous territory in designing a legislative apportionment scheme * * * Indiscriminate districting, without any regard for political subdivision or natural or historic boundary lines, may be little more than an open invitation to partisan gerrymandering.” Measured against that standard, which was underscored with renewed emphasis in the recent United States Supreme Court decision of Mahan v. Howell (410 U. S. 315, Feb. 21, 1973), defendants’ Plan “A” is unchallengeable on the issue of political subdivision maintenance.
Pragmatically, and the court does not operate in a vacuum, the real challenge to Plan “A” is that the total number of districts is too large and that the allocation of districts to the City of Albany, and to the Town of Colonie is disproportionate to a degree that maximizes the political “ clout ” of one of the major parties within the city while minimizing or at least diluting the “counterpunch” of the opposite party in the Town of Colonie. However pertinent that allegation may be it still is a fact that the 1970 population of the City of Albany is approximately 114,000 people which represents approximately 40% of the total county population of about 285,000. It follows that 40% of 39 districts equals a rounded off sum of 16 districts. In like manner the total population of the Town and Village of Colonie is 77,000 residents which is approximately 27% of the total county population and 27% of 39 districts is about 10.5 districts which is almost exactly the allocation of Plan “ A ” of districts to both the Town and Village of-CoIonie.
The People of the County of Albany have heretofore indicated that they approve of a Legislature comprised of 39 districts *251 and, further, the allocation of those districts as between the City of Albany and the other communities and towns in the county appear to the court to be fair and not in violation of any constitutional standard of either the Federal or State Constitution.
In my view, it is not the duty of the court to police the political effect of legislatively proposed plans of reapportionment. If such plans meet the requisite constitutional standards, in that 'they are not patently invidious in proposing a political scheme of gerrymandering, they are entitled to approval. It is the People themselves, either by changing their political representation at the ballot box or by .striking down a plan in a referendum, that should determine political issues, not the courts.
Plan “ A ” is approved and is hereby imposed as a temporary plan of reapportionment for the general election of 1973.
Lest the court appear to be acting in haste in approving the defendants’ proposed Plan “ A ” as to its constitutionality and, further, in imposing the plan as a temporary measure for the conduct of the 1973 general election, subject to becoming the permanent plan after the expiration of the necessary time for the passage of a local law and after voter approval in a referendum, should one be required by petition pursuant to section 10 (subd. 1, par. [ii]) of the Municipal Home Rule Law, it should be noted that legislation has passed both the State Assembly and Senate and has been signed into law by the Governor which would foreclose to the electorate their right to participate in the selection of nominees for the office of county legislator by eliminating a primary election in any county in which a plan of reapportionment is not in effect on March 12, 1973. In my view, it is more equitable and just for the court to impose a temporary plan that complies with the constitutional standards set forth in Reynolds v. Sims (377 U. S. 533, supra); Abate v. Mundt (25 N Y 2d 309, supra) and in the recent United States Supreme Court decision entitled Mahan v. Howell (410 U. S. 315, supra) than to permit March 12, 1973 to pass without Albany County being reapportioned and thereby foreclose to the People of Albany County their most fundamental right, that of selecting their political nominees.
Therefore, it is the direction of the court that an order be presented for signing and entering no later than 12:00 (noon) on Monday, March 12,1973, providing (a) that reapportionment Plan “ A ” is constitutional; (b) that Plan “A” is judicially imposed as a temporary plan for the conduct of the 1973 general election in November of that year; (c) that should JPlan *252 “A” become effective as a local law and be approved after a referendum, should one be required by petition pursuant to the appropriate provisions of the Municipal Home Rule Law, that said Plan “ A ” become the permanent plan of reapportio'nment for the County Legislature of the Copnty of Albany; (d) that should Plan “ A ” be disapproved aft'er a referendum, should one be requested, that Plan “ A ” continue to be a temporary plan for the conduct of the general election of November, 1973, and, thereafter, the County Legislature shall forthwith prepare a new plan of reapportionment and submit the same to this court for approval, and (e) that this court retain jurisdiction of this action.

. 17,18,24, 25,26, 27, 28, 29, 30th legislative districts.

. 19 and/20th legislative districts.

. The only exception is in the Town of New Scotland,